UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE
-------------------------------------------------- x
WALKER G. HARMAN, SR.,

       *Plaintiff,*

       *v.*                            **COMPLAINT**

ROBERT WICHLAND, and          **JURY REQUESTED**
RICHARD PENDERGAST,

       *Defendants.*
-------------------------------------------------- x

Plaintiff Walker G. Harman, Sr., by his counsel, Douglas, Leonard & Garvey, P.C., alleges for his Complaint against Defendants Robert Wichland and Richard Pendergast (collectively referred to as "Defendants") as follows:

## PRELIMINARY STATEMENT

1. This case is about fraud and embezzlement by Robert Wichland, business partner in Bayside Rentals, LLC, and Bayside Realty, LLC (Bayside Rentals, LLC, and Bayside Realty, LLC collectively referred to as "Bayside").

2. The case is also about Bayside accountant Richard Pendergast's concealment of the fraud and his negligent accounting malpractice that led to the perpetuation of the fraud.

## JURISDICTION

3. Pursuant to 28 U.S.C. § 1332, this Court has original jurisdiction over Plaintiff's claims, as there is complete diversity and the amount in controversy exceeds $75,000.

4. Venue is proper because a substantial part of the acts and omissions giving rise to this action occurred within this judicial district.

## PARTIES

5. Plaintiff was and is a resident of Dallas, Texas.

6. Defendant Robert Wichland was and is a resident of New Hampshire.

7. Defendant Richard Pendergast was and is a resident of New Hampshire.

## TRIAL BY JURY

8. Plaintiff respectfully requests a trial by jury.

## STATEMENT OF FACTS

9. Walker G. Harman, Sr. and Robert Wichland were partners in Bayside Realty, LLC, formed in 2008. They were also partners in Bayside Rentals, LLC, formed in 2010.

10. Plaintiff Harman and Defendant Wichland were general partners in Bayside.

11. Bayside's financial records and books were managed by Defendant Wichland.

12. Defendant Pendergast was the accountant who performed accounting functions for Bayside, and prepared Bayside tax returns.

13. Upon information and belief, Defendant Pendergast also was Defendant Wichland's personal accountant.

14. Plaintiff Harman relied on the Bayside accounting work performed by Defendant Pendergast, including, but not limited to, his reviews of financial records, financial investigations, and his completion of Bayside tax returns.

15. On October 24, 2019, Plaintiff Harman received a call from another, unnamed Bayside partner.

16. That partner informed Plaintiff Harman that Defendant Wichland drew on a $50,000 line of credit. Defendant Wichland neither conferred with, nor disclosed this, to the Bayside partners.

17. The unnamed Bayside partner also informed Plaintiff Harman that when he asked

Defendant Wichland why he drew down the line of credit that Defendant Wichland responded "you don't want to know."

18. Defendant Wichland drew down on the line of credit to cover funds that he had illegally withdrawn from the escrow account.

19. In fact, Defendant Wichland had been embezzling money from Bayside for years.

20. Plaintiff Harman immediately made plans to travel to New Hampshire to investigate the fraud.

21. In New Hampshire, Plaintiff Harman, on or about October 26, 2019, confronted Defendant Wichland and asked him about how long this had been going on.

22. Defendant Wichland responded "Walker, I can't imagine how disappointed you are in me" and confided that the fraud had been ongoing for seven (7) years.

23. Defendant Wichland illegally took money from Bayside escrow accounts and operating accounts.

24. Defendant Wichland would take money from escrow and operating accounts before any partners, notably Plaintiff, could notice, and would put that money into his personal account.

25. This diminution, however, would have been readily apparent to an accountant like Defendant Pendergast.

26. The difference between the removed and replaced money went unnoticed by Plaintiff, as Plaintiff was not responsible for overseeing the day to day financial details.

27. Defendant Wichland also admitted that he was unsure how much money he had stolen. Plaintiff Harman later determined that the amount stolen from the escrow accounts was approximately $268,492.58. It is unknown how much he stole from the operating accounts.

28. By Monday, October 28, 2019, Plaintiff Harman and another Bayside partner were reviewing the Bayside financial records to determine the full scope of the fraud Defendant Wichland committed, but it was impossible to determine how much he had stolen from the operating accounts.

29. On October 29, 2019 Defendant Pendergast was told explicitly about the fraud committed by Defendant Wichland.

30. Upon information and belief, however, Defendant Pendergast had already known about the fraud.

31. Specifically, Plaintiff Harman had asked Defendant Pendergast, in February 2019, to perform a financial investigation of all Bayside records.

32. There were certainly irregularities at the time, but Defendant Pendergast did not make these known to Plaintiff Harman.

33. Despite this, Defendant Pendergast continued to complete tax returns for Bayside even though he knew the information he reviewed and analyzed for years was either false or incomplete.

34. Furthermore, Defendant Pendergast, upon learning about the embezzlement, had an obligation to inform the partners, including Plaintiff Harman, about the full scope of the fraud yet he failed to do so.

35. Plaintiff Harman knew that Defendant Pendergast was an accountant for both Bayside and Defendant Wichland.

36. Defendant Pendergast's only response was that Defendant Wichland 'used a software he did not have access to' and it became clear to Plaintiff Harman that Defendant Pendergast must not have completed a legitimate financial investigation in February, despite telling Plaintiff Harman that he had done so.

37. Defendant Pendergast either failed to recognize that there was money being embezzled from the Bayside escrow accounts and operating accounts, or intentionally did not tell Plaintiff Harman of the ongoing embezzlement that he was, or should have been, aware of.

38. Defendant Pendergast failed to perform even basic accounting functions, such as checking financial records, checking financial books, and checking the Bayside ledgers, during that investigation.

39. Plaintiff Harman and Defendant Pendergast continued to review the Bayside financial records and determined that, by November 6, 2019, Bayside escrow accounts were short approximately $268,492.58.

40. Furthermore, it was clear that Defendant Pendergast had breached a duty of care to the partnership after failing to investigate the depletion of the escrow accounts and operating accounts over many years.

41. Defendant Pendergast, a close friend of Defendant Wichland, failed to report the fraud/embezzlement to Plaintiff Harman.

42. Upon information and belief, Defendant Pendergast and Defendant Wichland were both engaged in the scheme to defraud Bayside and Plaintiff Harman.

43. Upon information and belief, Defendant Pendergast and Defendant Wichland each had access to and knowledge about Bayside and Defendant Wichland's finances, information sufficient that each would clearly know about the fraudulent transactions.

44. Plaintiff Harman reported the Bayside fraud to the New Hampshire Real Estate Commission (NHREC) and delivered a Complaint through the NHREC on November 8, 2019.

45. Upon information and belief, Defendant Wichland's license to practice real estate was revoked permanently in 2021 by the New Hampshire Real Estate Commission because of the

Bayside fraud.[1]

46. Plaintiff Harman was forced to relinquish his business interests in Bayside following the fraud which resulted in a significant financial loss.

47. Plaintiff Harman lost his ownership interest in Bayside Rentals.

48. Plaintiff Harman also lost ownership interest in Bayside Realty.

49. Plaintiff Harman received a substantial yearly income from Bayside which was both diminished during the course of the fraud and was, subsequently, eliminated because of the fraud.

50. Plaintiff Harman had his investments in Bayside wrongfully diminished and devalued because of the Bayside fraud.

51. Over the course of roughly a decade, starting in 2008, Plaintiff Harman loaned over $300,000 to Bayside.

52. Plaintiff Harman and another Bayside partner, in January 2020, agreed to have Bayside repay only $75,400 of the outstanding $188,384.68 from the loan as satisfaction for the loan in its entirety.

53. But for the fraud and negligent accounting, Plaintiff Harman would not have been forced to take a loss on the loan.

## CAUSES OF ACTION

### FIRST CLAIM

### Fraud committed by Robert Wichland

54. Plaintiff hereby realleges and incorporates each and every allegation contained in

---

[1] See New Hampshire Real Estate Commission File No. 2019-065.

paragraphs 1 through 52 with the same force as though separately alleged herein.

55. Defendant Wichland committed fraud by stealing money from escrow accounts and operating accounts.

56. Defendant Wichland illegally took money from Bayside escrow accounts and operating accounts.

57. Defendant Wichland would take money out of Bayside escrow and operating accounts in seemingly random amounts to mimic what would seem to be normal, regular business transactions.

58. The difference between the removed and replaced money went unnoticed by Plaintiff, as Plaintiff only reviewed financial records prepared by Defendant Wichland and Defendant Pendergast.

59. However, because Defendant Wichland did this for seven (7) years, he was able to steal hundreds of thousands of dollars from the partnership.

60. Plaintiff was a general partner in Bayside.

61. Plaintiff was forced to withdraw from the Bayside partnership upon learning of the fraud.

62. Plaintiff suffered significant financial loss because of the fraud, including loss of loan repayments, loss of ownership interest, and loss of income.

63. As such, Plaintiff is entitled to damages, costs, fees, expenses, and any other relief the Court deems proper.

## SECOND CLAIM
### Conversion by Defendant Wichland

64. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 52 with the same force as though separately alleged herein.

65. Plaintiff was entitled, as a general partner, to use and control over Bayside funds.

66. Defendant Wichland acted in a way wrongfully inconsistent with the property rights of the Plaintiff.

67. Defendant Wichland so seriously interfered with the right of Plaintiff to control Bayside funds that he effectively stole all control or right from Plaintiff.

68. Because Plaintiff was not able to use or control the converted funds, he was damaged by being forced to sell his Bayside ownership interest for a substantial loss.

69. Defendant Wichland converted Bayside funds, deprived Plaintiff of any control or use thereof, control which he would have otherwise been entitled to, and, therefore, damaged Plaintiff and Plaintiff is entitled to recover damages, costs, fees, and other remedy the Court deems proper.

## THIRD CLAIM

### Fraud and Professional Malpractice by Defendant Pendergast

70. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 52 with the same force as though separately alleged herein.

71. Defendant Pendergast was the accountant for Bayside and Defendant Wichland.

72. Defendant Pendergast had an intimate and in depth understanding of both Bayside's and Defendant Wichland's finances.

73. Upon information and belief, Defendant Pendergast knew that Defendant Wichland was stealing money from the escrow accounts and operating accounts.

74. Defendant prevented Plaintiff from realizing there was a fraud committed.

75. Defendant Pendergast was asked, by Plaintiff, to perform an investigation of Bayside financial records.

76. Plaintiff was a partner in Bayside.

77. Defendant Pendergast, upon information and belief, knew there were accounting irregularities, and that Defendant Wichland was stealing from Bayside, yet told Plaintiff there were no irregularities.

78. Plaintiff suffered significant financial loss because of the fraud, including loss of loan repayments, loss of ownership interest, and loss of income.

79. As such, Plaintiff is entitled to damages, costs, fees, expenses, and any other relief the Court deems proper.

## FOURTH CLAIM

### Negligent Accounting and Professional Malpractice by Defendant Pendergast

80. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 52 with the same force as though separately alleged herein.

81. Defendant Pendergast was the accountant for Bayside.

82. Defendant Pendergast owed a duty of loyalty and a duty of care to the partnership.

83. Plaintiff was a partner at the time this cause of action accrued.

84. Defendant Pendergast breached his duty of care when he negligently failed to recognize that Defendant Wichland was stealing money out of Bayside escrow accounts.

85. Plaintiff requested Defendant Pendergast investigate the financial records of Bayside in 2019.

86. Defendant Pendergast informed Plaintiff that there was nothing to suggest concern.

87. This was incorrect as Defendant Wichland had been stealing from the escrow accounts and operating accounts.

88. Plaintiff justifiably relied on Defendant Pendergast's assessment and, therefore, the fraud was perpetuated.

89. Plaintiff was injured by this breach as he was forced to exit the partnership out of

financial and legal concerns.

90. Plaintiff suffered significant financial loss because of the misrepresentation and the negligence, including loss of loan repayments, loss of ownership interest, and loss of income.

91. As such, Plaintiff is entitled to damages, costs, fees, expenses, and any other relief the Court deems proper.

## FIFTH CLAIM

### Negligent Misrepresentation by Defendant Pendergast

92. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 52 with the same force as though separately alleged herein.

93. Plaintiff, as a general partner in Bayside, asked Defendant Pendergast to perform accounting functions and a financial investigation for Bayside.

94. Plaintiff asked Defendant Pendergast to search for any financial irregularities with Bayside escrow and operating accounts.

95. Defendant Pendergast confirmed that he would do that investigation and then, after, told Plaintiff that there was nothing to be concerned about.

96. This was untrue, as Defendant Wichland had been stealing money out of the Bayside escrow and operating accounts.

97. Defendant Pendergast negligently misrepresented to Plaintiff that the Bayside accounts were correct and there was nothing inconsistent or irregular, a material fact upon which Plaintiff reasonably relied.

98. Plaintiff's reasonable reliance on the misrepresentation led to the perpetuation of the Bayside fraud.

99. That perpetuation led to an increase in damages sustained by Plaintiff.

100. Plaintiff suffered significant financial loss because of the misrepresentation and the

negligence, including loss of loan repayments, loss of ownership interest, and loss of income.

101.  As such, Plaintiff is entitled to damages, costs, fees, expenses, and any other relief the Court deems proper.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A.  For the first cause of action, damages, costs, and fees to be determined at trial;

B.  For the second cause of action, damages, costs, and fees to be determined at trial;

C.  For the third cause of action, damages, costs, and fees to be determined at trial;

D.  For the fourth cause of action, damages, costs, and fees to be determined at trial; and

E.  For the fifth cause of action, damages, costs, and fees to be determined at trial.

Date: September 30, 2022

By:  /s/ Benjamin T. King
Benjamin T. King, Esq.
N.H. Bar No. 12888
Douglas, Leonard & Garvey, P.C.
14 South Street, Suite 5
Concord, NH  03301
603-224-1988
Fax: 603-229-1988
benjamin@nhlawoffice.com

 /s/   Walker G. Harman, Jr.
Walker G. Harman, Jr.
*Pro Hac Vice Admission Pending*
N.Y. Bar No. 3027034
The Harman Firm, LLP
1270 Sixth Ave., Suite 756
New York, New York 10020
646-248-2288
wharman@theharmanfirm.com